1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    ALBERT E. RICH,                       Case No.  18-cv-06266-EMC

8                    Plaintiff,

9           v.                             **ORDER GRANTING IN PART AND
                                           DENYING IN PART DEFENDANTS'
10   J. PEREIRA, et al.,                    MOTION FOR SUMMARY
                                           JUDGMENT AND TO DISMISS**
11                  Defendants.            Docket No. 66

12

13

14                    **I.      INTRODUCTION**

15          Plaintiff Albert Rich brings this lawsuit against multiple defendants for claims arising out

16   of an alleged assault he suffered while in custody as a pretrial detainee.  Mr. Rich is currently

17   incarcerated at California State Prison in Los Angeles County.  The defendants are the County of

18   Alameda; the Sheriff-Coroner of Alameda County, Gregory J. Ahern; and numerous Deputy

19   Sheriffs[1] of Alameda County (collectively, the "Defendants").  Pending before the Court is

20   Defendants' motion for summary judgment and to dismiss certain claims in the first amended

21   complaint.  Docket No. 66 ("Mot.").  For the reasons discussed below, Defendants' motion is

22   **GRANTED** in part and **DENIED** in part **with leave to amend**.

23                    **II.      BACKGROUND**

24   A.    Factual Background

25          Mr. Rich's first amended complaint alleges as follows.  On April 20, 2018, Mr. Rich was

26   in transit to and from court in Alameda County.  Docket No. 60 ("FAC") ¶ 6.  He alleges that,

27   ───────────────

28   [1] *E.g.*, J. Pereira (#2320), P. Gainer (#203076), A. Gaston (#2369), M. Guichard (#2118), A.
     Durmisevic (#2368), and S. Sorensen (#1761) (the "Deputy Defendants").

United States District Court
Northern District of California

during the transit, he was "cooperative, non-combative and presented no threat to himself or others." *Id*. Mr. Rich was in route to "a housing area where [he] was likely to be subjected to extremely violent conditions which did not exist in [his] then-current housing area." *Id*.

According to Mr. Rich, when he inquired as to why he was being transferred, the Deputy Defendants "acted in accordance with directives of Alameda County and Sheriff Gregory Ahern by causing severe harm and injury to [him][.]" *Id*. More specifically, Mr. Rich alleges the following ensued:

- Deputy Defendants instructed Mr. Rich to sit at a table;
- After complying, Defendant Gainer grabbed Mr. Rich's arm, twisted it, and pushed his face toward the table, causing him to fall forward;
- Deputy Defendants then began to "punch, hit, kick and apply intense physical pressure to Plaintiff's head, neck, torso lower, back areas . . . . One or more of the Defendants grabbed Plaintiff by the neck and slammed his face onto a metal object in the room."
- All of the Deputy Defendants "participated in, encouraged, condoned and perpetuated this beating of Plaintiff."

*Id*. ¶¶ 7–9. The foregoing occurred notwithstanding, as alleged by Mr. Rich, that "at no time did [he] make any aggressive action(s) and/or assault, hit, swing at or otherwise show any attempt to resist or engage in a physical altercation." *Id*. ¶ 7. Instead, the FAC alleges that this event was "commonplace and customarily undertaken by the Defendant Deputies and other Deputy Sheriffs in an effort to control, manipulate, harm, injure, inflict pain and torture inmates (including Plaintiffs [sic]) and to exert and enforce a sense of control and a threatening atmosphere." *Id*. ¶ 10.

Mr. Rich further alleges that Defendants covered up the incident with "falsified reports, prepared written statements, manipulated body cameras and surveillance systems and otherwise engaged in conduct design[ed] to cover-up the unlawful and abusive treatment to Plaintiff. *Id*. ¶ 11. Moreover, Defendants "failed and refused to properly train, screen, conduct background checks, supervise, reprimand, direct and instruct its senior management personnel, staff and

United States District Court
Northern District of California

1  Deputy Sheriff's [sic] in a manner at or above the standard of care and in accordance with

2  Defendants' stated policies and the laws of the State of California as all of same relate to

3  maintaining and promoting a health[y] and safe environment for inmates . . . ." *Id.* ¶ 15.

4      Lastly, Mr. Rich contends that the Deputy Defendants "failed and refused to obtain prompt

5  medical care for [him] . . . . [and] obstructed such medical care and treatment[.]" *Id.* at ¶ 18.

6  According to Mr. Rich, all of the forgoing was the product of a conspiracy by Defendants. *Id.* ¶¶

7  16–17.

8  B.   Procedural Background

9      Mr. Rich, formerly proceeding *pro se*, filed his complaint on October 12, 2018.  Docket

10  No. 1.  Following Mr. Rich's retainment of counsel (Docket No. 46), he filed his first amended

11  complaint on January 6, 2020, alleging the following claims:  (1) assault; (2) battery; (3)

12  intentional infliction of emotional distress; (4) negligence; (5) violation of civil rights under 42

13  U.S.C. § 1983; and (6) violation of Bane Act under California Civil Code Section 52.1.  Docket

14  No. 60.  Defendants filed their motion for summary judgment and to dismiss on March 16, 2020.

15              **III.    LEGAL STANDARD**

16  A.   Rule 56

17      Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment

18  [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and

19  the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is

20  genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party.

21  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  "The mere existence of a

22  scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could

23  reasonably find for the [nonmoving party]."  *Id.* at 252.  At the summary judgment stage, evidence

24  must be viewed in the light most favorable to the nonmoving party and all justifiable inferences

25  are to be drawn in the nonmovant's favor.  *See id.* at 255.[2]

26  _____

27  [2] Evidence may be presented in a form that is not admissible at trial so long as it could ultimately

28  be capable of being put in admissible form.  *See* Fed. R. Civ. P. 56(c)(2) (providing that "[a] party
   may object that the material cited to support or dispute a fact cannot be presented in a form that

1    Where a defendant moves for summary judgment based on an affirmative defense (*i.e.*, an

2    issue on which it bears the burden of proof), the defendant must establish "all of the essential

3    elements of the . . . defense to warrant judgment in [its] favor." *Martin v. Alamo Cmty. College*

4    *Dist.*, 353 F.3d 409, 412 (5th Cir. 2003) (internal quotation marks omitted; emphasis omitted); *see*

5    *also Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1177 (9th Cir. 2006) (noting that

6    a defendant bears the burden of proof at summary judgment with respect to an affirmative

7    defense).

8    B.    Rule 12(b)(6)

9         Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain

10   statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A

11   complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil

12   Procedure 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss

13   after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic*

14   *Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint]

15   'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*,

16   765 F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as

17   true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek*

18   *v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a

19   complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient

20   allegations of underlying facts to give fair notice and to enable the opposing party to defend itself

21   effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).[3]  "A claim has facial

22   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

23

24   _____

25   would be admissible in evidence").  *See, e.g.*, *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d
     840, 846 (9th Cir. 2004) (stating that "[e]ven the declarations that do contain hearsay are
26   admissible for summary judgment purposes because they 'could be presented in an admissible
     form at trial'").

27
     [3] A court "need not . . . accept as true allegations that contradict matters properly subject to
28   judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.
     2001).

United States District Court
Northern District of California

1    inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The

2    plausibility standard is not akin to a probability requirement, but it asks for more than a sheer

3    possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).

## IV.    DISCUSSION

5            Defendants' motion seeks summary judgment on their affirmative defense of failure to

6    exhaust administrative remedies.  More specifically, they argue that Mr. Rich's federal law claims

7    (except for the excessive force claim) should be dismissed for failure to exhaust administrative

8    remedies under the Prison Litigation Reform Act ("PLRA").  Additionally, Defendants' motion

9    seeks dismissal of Mr. Rich's Section 1983 claims for municipal liability, supervisor liability,

10   violation of equal protection, conspiracy, coverup, or indifference to medical needs, as well as his

11   state tort claims.  In response, Mr. Rich contends he exhausted all administrative remedies and has

12   sufficiently pled claims for municipal liability and vicarious liability.  He also argues, however,

13   that the FAC does ***not*** plead claims for equal protection or conspiracy, so the motion's argument

14   as to those claims are misplaced.  Lastly, Mr. Rich requests leave to amend and/or permission to

15   conduct discovery.

16   A.     Motion for Summary Judgment Regarding Failure to Exhaust Administrative Remedies

17           The PLRA amended 42 U.S.C. § 1997e and provides that "[n]o action shall be brought

18   with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

19   confined in any jail, prison, or other correctional facility until such administrative remedies as are

20   available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion in prisoner cases covered by Section

21   1997e(a) is mandatory.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  The PLRA exhaustion

22   requirement requires "proper exhaustion" of all available administrative remedies.  *Woodford v.*

23   *Ngo*, 548 U.S. 81, 93 (2006).  Even where the prisoner seeks relief not available in grievance

24   proceedings, notably money damages, exhaustion is a prerequisite to suit.  *Id.*; *Booth v. Churner*,

25   532 U.S. 731, 741 (2001).  The obligation to exhaust persists as long as some remedy is available;

26   when that is no longer the case, the prisoner need not further pursue the grievance.  *Brown v.*

27   *Valoff*, 422 F.3d 926, 934–35 (9th Cir. 2005).  The PLRA, however, does not require exhaustion

28   when circumstances render administrative remedies "effectively unavailable."  *Sapp v. Kimbrell*,

United States District Court
Northern District of California

1    623 F.3d 813, 822 (9th Cir. 2010).

2        Non-exhaustion under § 1997e(a) is an affirmative defense under the PLRA; inmates are

3    not required to specially plead or demonstrate exhaustion in their complaints.  *Jones v. Bock*, 549

4    U.S. 199, 216 (2007).  In the rare event that a failure to exhaust is clear on the face of the

5    complaint, a defendant may move for dismissal under Federal Rule of Civil Procedure 12(b)(6).

6    *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).  Otherwise, defendants must

7    produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56.  *Id*.

8    If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to

9    exhaust, a defendant is entitled to summary judgment under Rule 56.  *Id*. at 1166.  The particular

10   process by which an inmate exhausts administrative remedies is governed by the prison's own

11   grievance procedures.  *Jones*, 549 U.S. at 218.

12       There is no dispute that Mr. Rich filed grievances related to the April 20, 2018 incident.

13   Thus, the issue before the Court is the scope of such grievances and the adequacy of the

14   administrative exhaustion.  Among the federal claims, Defendants argue that these grievances only

15   exhaust Mr. Rich's Section 1983 Fourteenth Amendment excessive-force claim.  *Id*.  More

16   specifically, Defendants argue that the following eight claims in the FAC are not exhausted:  (1)

17   municipality claim against Alameda County; (2) failure to train/supervise/control against Sheriff

18   Ahern; (3) race discrimination; (4) excessive force; (5) failure to intervene; (6) conspiracy; (7)

19   unlawful coverup; and (8) indifference to medical needs against all Defendants.  *Id.*  Mr. Rich

20   contends that the grievances were sufficient to put Defendants on notice as to all his federal

21   claims.  Docket No. 68 ("Opp.") at 5–6.

22       Mr. Rich initially filed Grievance No. 18-1032, but he thereafter filed additional

23   grievances related to the April 20, 2018 incident.  Docket No. 66-1 ("Carusu Decl."), Exs C–N.

24   This Court must determine whether these grievances—whether individually or collectively—put

25   Defendants on notice regarding all Mr. Rich's federal claims under Section 1983 for the purpose

26   of administrative exhaustion under the PLRA.  In *Jones*, the Supreme Court held that a prison's

27   own grievance process, not the PLRA, determines how much specificity a grievance must contain

28   to satisfy the PLRA exhaustion requirement.  549 U.S. at 218.  Here, the Grievance Procedure at

United States District Court
Northern District of California

6

1   the Alameda County Sheriff's Office states:

2           When an inmate wishes to submit a formal written grievance, he/she
            must proceed as follows:
3
            a.  Obtain the Inmate Grievance form (ML51) from a deputy.
4
            b.  Only one complaint per grievance will be accepted.  Grievances
5           with more than one complaint are subject to refusal.

6           c.  Fill out the form completely and legibly.  **State the exact nature
            of the grievance and all the facts that substantiate the complaint** . .
7           . .

8   Carusu Decl., Ex. B (emphasis added).  Accordingly, pursuant to *Jones*, the Court finds that the

9   Alameda County Sheriff's Office requires a heightened level of specificity in its grievance

10  procedure.  As such, the Court must determine whether Mr. Rich's grievances included the

11  requisite level of specificity for all his federal claims.

12          On April 25, 2018, Mr. Rich filed his first grievance, No. 18-1032, which stated the

13  following:

14          On said day and time the following happened at 4-20-18 in the
            morning[.]  The two deputys [sic] that took me to I.T.R. to wait to
15          be transported to court[.]  That morning, I told them on there [sic]
            camp before moving me that Deputy Gainer "does not like me and
16          she acts as if she wants to fight me."  Well I went to court once back
            to I.T.R. I was waiting in I.T.R. to be moved back to my housing
17          unit, while waiting Deputy Gainer and Gatson came and moved me
            back to Unit 1[.]  Once in Unit 1, I was told to go to D Unit, witch
18          [sic] I did and Cell 9, I was in A Pod Cell 5 before I went to court so
            I asked to speak to a Srgt and mad [sic] a set [sic] at the table 10 to
19          15 second went by Deputy Gainer grabbed my right arm by the
            elbow and pulled me[.]  I had waist chains and cuffs on while all this
20          is going on sitting at the table[.]  But my left foot was on the metal
            pole if not when Deputy Gainer pulled my arm I would have fell and
21          hit my head!  Then all the deputys [sic] pulled me then pushing me
            up even pulling out some of my hair through [sic] me in the cell
22          an[d] as I was sitting up Deputy Perez kicked me in my lower back
            then I get on my knees then I feel Deputy Perez grab the back of my
23          neck with force then slam it on the mental [sic] sink hard.  I will like
            to add I felt a punch in the eye but did not see who did it.
24

25  Carusu Decl., Ex. C.  The Alameda County Sheriff's Office denied Mr. Rich's grievance with the

26  following response:

27          As you were being escorted to your cell, located in Housing Unit
            One (1), you entered D-pod and stopped, turned around and
28          attempted to exit the pod.  You were given several orders to enter

                                            7

your cell but you refused to comply with all verbal orders and sat down at a D-pod table.  After several more verbal orders to go into your cell, you continued to refuse.

While wearing your waist restraints, the deputy grabbed your right wrist to escort you to your cell.  You pulled your hand away and broke the grasp of the deputy.  You clenched your right hand and struck the deputy.  Fearing an additional assault was imminent, deputies responded and used the force necessary at the time in order to overcome your resistance to gain your compliance.

You were medically evaluated by a California Forensic Medical Group nurse, transferred to the Outpatient Housing Unit, where you remained for further medical evaluation.  You later cleared for further incarceration.

The report clearly illustrates the events that led to the physical force used against you.

Your grievance is **DENIED**.

*Id.* (emphasis in original).  After this denial, Mr. Rich filed additional grievances—some

pertaining to the April 20, 2018 incident, and some pertaining to other, unrelated incidents (*e.g.*,

problems with his meals).  The additional use-of-force-related grievances add the following:

- Grievance No. 18-1136, dated May 8, 2018:

    On the said date and time on 4-20-18 in the afternoon, I was assaulted by Deputy J. Pereira[.]  I have put in a grievance form but I put the wrong deputy's name on that form[.]  I am in a great deal of pain on a day to day because of this issue and these symptoms is [sic] still worsening on a day to day, I will now as [sic[ speaking to my lawyers seek and [sic] investigation.  I do not feel safe with Deputy Gainer or Pereira at S.R.J. because of the said issue.  Will forward copy to ACSO Internal Affairs Unit . . . .

Carusu Decl., Ex. D.

- Grievance No. 18-1165, dated May 11, 2018:

    This ML-51 is due to Gregory J. Ahern and the so called investigation that involved Deputy J. Pereira in what that Deputy assaulted me and cause of that I have headaches and a ringing in my head also two scars on my face and slight blurry visions.  This was 22 days ago and I have not saw [sic] a doctor still about this issue and will inform the media and legal workers in this issue.  I also did not seen [sic] a form for a 21 day extension due to the fact there should be video in this issue and forms filled out, so I know that the video shows other than what the form says and the Deputy or Deputys [sic] involved in this issue shows.  And will be held for there [sic] behavior!  I am also going to contact the media on this issue thank you.  Note I will file two ML-51 forms a week till this issue is fixed.

United States District Court
Northern District of California

8

1    Carusu Decl., Ex. E.

2    • Grievance No. 18-1165, dated May 31, 2018:

3         I am writing this grievance form due to the fact that my civil rights
         were violated on April 20th by J. Pereira and Deputy Gainer.
4         Deputy Pereira did so by assaulting and battering me and without
         cause in doing so he violated the jails [sic] use of force policy[.]  His
5         actions were not an attempt to defuse the situation but rather his
         actions escalated the situation.  This is my third or so ML-51 form
6         on this issue[.]  I will seek a civil complaint with my lawyer.  Also
         because of this I have not seen a doctor[.]  I have headaches, blurry
7         vision in my left eye, back pain in my lower back area, shoulder
         pain in my right shoulder[.]  I have put in several sick call forms and
8         have not got a xray on my back or my eye checked out or my head,
         all of what is not right!  Unjustified striking beating or infliction of
9         bodily harm without cause will give rise for violation of civil rights
         laws.  A cause of action is stated when these elements are present:
10        (1) an actual injury; (2) unnecessary force; (3) malicious attack.
         This deputy did all 3!!!

11

12   Carusu Decl., Ex. F.  For each of the foregoing grievances filed by Mr. Rich, the Alameda County

13   Sheriff's Office denied the claim by referencing its initial denial.

14        The Ninth Circuit has addressed PLSA exhaustion in two decisions.  *See, e.g.*, *Griffin v.*

15   *Arpaio*, 557 F.3d 1117 (9th Cir. 2009); *Morton v. Hall*, 599 F.3d 942 (9th Cir. 2010).  In *Griffin*,

16   the plaintiff brought a Section 1983 claim against numerous prison officials of the county in which

17   he was incarcerated.  557 F.3d at 1118.  The claim arose from multiple falls from the top bunk of

18   his jail cell.  At the time, he suffered from mental health conditions and took prescription

19   medication, which "impaired his vision and depth perception, making it difficult for him to access

20   upper bunks."  *Id*.  The plaintiff then filed an inmate grievance, requesting a ladder to access his

21   top bunk.  *Id*.  The grievance described his injuries related to the falls and his mental health

22   conditions and medication.  *Id*.  During the pendency of his grievance, however, a prison nurse

23   assigned the plaintiff a lower bunk.  *Id*. at 1118–19.  Due to this assignment, the defendants

24   deemed the grievance resolved.  *Id*. at 1119.  However, the plaintiff eventually alleged in a federal

25   lawsuit that prison officials ignored the nurse's order.  *Id*.  Before he filed the federal lawsuit, he

26   appealed the grievance, but failed to mention the alleged disregard of his lower bunk

27   assignment—*i.e.*, the appeal continued to request a top bunk.  *Id*.  The appeal was denied because

28   the reviewer also considered the request moot after the nurse's lower bunk assignment.  *Id*.

9

1    After the plaintiff in *Griffin* brought suit in federal court for violation of the Eighth

2 Amendment based on a deliberate indifference to his medical needs, the district court dismissed

3 for failure to exhaust administrative remedies as to his new claim pertaining to the defendants

4 disregarding the nurse's lower bunk assignment.  *Id.*  On appeal discussing the scope of

5 grievances, the Ninth Circuit stated that

6
> Griffin's failure to grieve deliberate indifference does not invalidate
> his exhaustion attempt.  ***A grievance need not include legal***
7 > ***terminology or legal theories unless they are in some way needed***
> ***to provide notice of the harm being grieved***.  A grievance also need
8 > not contain every fact necessary to prove each element of an
> eventual legal claim.  The primary purpose of a grievance is to alert
9 > the prison to a problem and facilitate its resolution, not to lay
> groundwork for litigation.
10

11 *Id.* at 1120 (emphasis added).  Notwithstanding the foregoing, the Ninth Circuit affirmed the

12 district court's dismissal.  *Id.* at 1121.  The court reasoned that the plaintiff did not properly

13 exhaust because "[h]e did not provide notice of the prison staff's alleged disregard of his lower

14 bunk assignments.  The officials responding to his grievance reasonably concluded that the nurse's

15 order for a lower bunk assignment solved Griffin's problem."  *Id.*

16    Defendants also cite *Morton v. Hall*, 599 F.3d 942 (9th Cir. 2010).  There, a plaintiff

17 inmate was assaulted by other inmates.  *Id.* at 944.  After the incident, the defendants denied the

18 plaintiff visitation rights with minors based on a provision of the California Code of Regulations,

19 which restricts visitation rights on inmates arrested for or convicted of offenses involving minors,

20 including sex offenses and homicide.  *Id.*  The plaintiff subsequently filed a grievance with the

21 prison administration regarding this restriction on his visitation rights.  *Id.*  He eventually filed a

22 lawsuit in district court against prison staff alleging a violation of Section 1983 for (1) the

23 deliberate indifference of prison staff contributed to his assault by other inmates, (2) his

24 confinement to administrative segregation following the assault was unlawful, and (3) denial of

25 visitation rights with minors was a serious deprivation of his rights.

26    The district court in *Morton* granted the defendants' motion for summary judgment for

27 their affirmative defenses of failure to exhaust administrative remedies under the PLRA.  *Id.*  In a

28 short analysis, the Ninth Circuit affirmed, finding that on the record, the plaintiff did not exhaust:

United States District Court
Northern District of California

"In this case, California regulations required Morton to lodge his administrative complaint on CDC Form 602 and 'to describe the problem and action requested.'  The Form 602 Morton filed relating to the visitation restriction does not even mention the assault or theorize that the visitation restriction imposed was related to the assault."  *Id.* at 946 (internal citations omitted).  Thus, the court concluded that the grievance "was insufficient to put prison officials on notice of Morton's complaint that prison-staff conduct contributed to his June 2003 assault."  *Id.*

Defendants contend Mr. Rich's grievances were factually deficient to put them on notice, much like the Ninth Circuit found in *Griffin* and *Morton*.  Mr. Rich argues *Griffin* is distinguishable because, here, all his claims arise out of the same conduct—*i.e.*, the April 20, 2018 incident.  Many of his claims are based on the facts of that incident and the grievances Mr. Rich filed, which provide plenty of notice of those claims.  They include the claims for assault, battery, intentional infliction of emotional distress, negligence and Section 1983 excessive force claims, at least as against the Defendants identified in the grievances:  Sheriff Ahern, Deputy Pereira, and Deputy Gainer.  The most specific allegation Mr. Rich made against these individuals was in Grievance No. 18-1165, dated May 31, 2018, where he wrote, "I am writing this grievance form due to the fact that my civil rights were violated on April 20th by J. Pereira and Deputy Gainer.  Deputy Pereira did so by assaulting and battering me and without cause in doing so he violated the jails [sic] use of force policy[.]"  Carusu Decl., Ex. F.

Additionally, the Court finds that Mr. Rich's grievances give reasonable notice for failure to intervene, cover up, and indifference to medical needs; he identifies multiple guards who presumably could have intervened and complains about not being heard regarding the assault and adequate medical attention thereafter.  However, nothing in Mr. Rich's grievances—express or implied—alludes to claims for race discrimination or a conspiracy and thus no notice of such allegations was given.  Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on Mr. Rich's claims for Equal Protection and conspiracy under Section 1983 because they are not exhausted under the PLSA.

But the Court **DENIES** summary judgment on the claims against the individual Defendants on grounds of exhaustion because while Mr. Rich's grievances only name Sheriff

Ahern, Deputy Pereira, and Deputy Gainer, specifically, the grievances indicate that he was hit in the eye and could not see who the assailant was.  While Mr. Rich's inability to identify the puncher is subject to reasonable debate (whether it was either of the two deputies present or if additional deputies arrived), a reasonable investigation into the incident would reveal which other deputies were on the same shift.  Mr. Rich does allude in his grievance to the fact that there may have been other deputies present during his assault.  He states:  "I also did not seen [sic] a form for a 21 day extension due to the fact there should be video in this issue and forms filled out, *so* I know that the video shows other than what the form says *and the Deputy or Deputys* [sic] *involved in this issue shows.*  And will be held for there [sic] behavior."  Carusu Decl., Ex. E. Therefore, the Defendants were on sufficient notice for grievance purposes that additional deputies may have been involved.

Whether Mr. Rich exhausted his *Monell* claim against the County presents a more different question.  *See Monell v. Department of Social Services Of New York*, 436 U.S. 658 (1978).  The Ninth Circuit has not squarely addressed whether *Monell* claims have to be exhausted under the PLRA.  One district court in Texas, however, has rejected the argument that an inmate must exhaust his or her *Monell* claim in order to pursue it in federal court.  *See Springer v. Unknown Rekoff*, 2016 WL 5372526, at *5 (S.D. Tex. Sept. 26, 2016).

This Court finds that the *Springer* decision strikes the appropriate balance between access to justice on one hand, and practical administrative notice on the other.  In its recent decision, the Southern District of Texas noted that,

> The County has not cited any case in which a court dismissed a *Monell* claim because that claim was not included in prison grievances complaining of conduct that was later alleged to have been engaged in pursuant to official custom or policy.  Dismissing cases on that basis would impose unduly onerous barriers on inmates (and do so in many of the most egregious cases of official misconduct) without furthering the purposes of the PLRA . . . . Under the fair notice standard, it seems that an inmate will typically exhaust his administrative remedies on a *Monell* claim simply by exhausting his remedies on his claims regarding the officially sanctioned conduct.  *If the conduct is indeed officially sanctioned, prison officials will know it from looking at the grievance.*  The Court is not persuaded that Springer was required to allege *Monell* claims in his grievance in order to pursue those claims against the County.

12

1   *Id.* at 5 (emphasis added).  The Court agrees.  It is not reasonable to expect a lay inmate or

2   detainee to be versed in the subtleties of *Monell*.  On the other hand, the responding government

3   agency is well aware of the potential liability it faces should the described conduct be found to be

4   the result of its customs or policies.  After all, it is in a far better position than the plaintiff to know

5   the relevant facts in that regard.  This Court therefore **DENIES** Defendants' summary judgment

6   motion for failure to exhaust on the *Monell* claim against the County.

7         Mr. Rich also requests leave to conduct Rule 56(d) discovery pertaining to administrative

8   exhaustion.  However, the Court cannot discern any discovery that would change the outcome

9   herein.  The Court **DENIES** Mr. Rich's request for leave to propound Rule 56(d) discovery.

10  B.   Motion to Dismiss

11        Defendants also seek to dismiss all claims in the FAC for failure to satisfy the pleading

12  requirements.  Mr. Rich does not expressly allege separate claims, but, rather, assert them as legal

13  theories on which to impose liability for his excessive-use-of-force claim.  Because of this, he

14  does not offer a substantive response, nor does he defend his pleadings for these legal theories

15  (except for his claims for municipality and supervisory liability).  On reply, Defendants take the

16  position that if Mr. Rich amends his complaint to only allege a Fourteenth Amendment excessive

17  force claim, then the request for Rule 12(b)(6) dismissal would be moot.  Regardless, this Court

18  analyzes the FAC under the federal pleading standards.  As a preliminary matter, this Court

19  **GRANTS** Defendants' motion to dismiss **without prejudice** as to Deputies Gaston, Guichard,

20  Durmisevic, and Sorensen -- there is nothing specifically alleged regarding these individuals in the

21  FAC or the grievances.

22  C.   Municipality Liability

23        The County of Alameda cannot be held liable under Section 1983 for the actions of its

24  employees unless those employees were acting pursuant to "an official municipal policy."  *Webb*

25  *v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003) (citing *Monell*, 436 U.S. at 692).  Municipality

26  liability will exist if an employee acts under "longstanding practice of custom"—*i.e.*, an official

27  policy need not be adopted by the municipality.  *Id.*  Moreover, liability can extend to a

28  municipality on a single incident, if "the person causing that violation has final policymaking

13

authority." *Id*. at 1164.

Defendants argue that the FAC fails to plead specific facts demonstrating that the April 20, 2018 use of force occurred pursuant to an official policy or custom that was adopted by the County of Alameda permitting the excessive use of force.  Mot. at 13.  Mr. Rich's opposition states that "[t]he FAC clearly allege ongoing pattern and practices, failures to train and other policy flaws (*see e.g.*, Paragraphs 9–13 and 15–17) . . . ."  Opp. at 8.  In Paragraph 10 of the FAC, Mr. Rich alleges that the alleged excessive use of force was "common place and customarily undertaken by the Defendant Deputies and other Deputy Sheriffs in an effort to control, manipulate, harm, injure, inflict pain and torture inmates (including Plaintiffs [sic]) and to exert and enforce a sense of control and a threatening atmosphere."  FAC ¶ 10.  Additionally, Mr. Rich claims that "[s]uch practices are unlawful and violate the various policies of the State of California and the County of Alameda . . . . Such conduct is condoned by those who are the decision-makers, policy-makers, managing directors, supervisors and executive officers, etc. of each of the Defendants . . . ." *Id*.

Defendants contend that the foregoing allegations fail the *Twombly* standard because Mr. Rich provides no examples about how such incidents are "commonplace" or "customarily undertaken" by deputies.  Defendants also argue there are no examples or allegations about how these policies were condoned by the County of Alameda or its decision-makers.  *Id*.  *See Ivey v. Bd. of Regent of Univ. of Alaska*, 637 F.2d 266, 268 (9th Cir. 1982) ("Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.").  In *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636–37 (9th Cir. 2012), the Ninth Circuit noted that pre-*Twombly*, the precedent was that "a claim of municipal liability under § 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice."  *Id*. at 636.  However, the court explicitly stated that the *Twombly* standard extends to *Monell* claims against municipalities.  *Id*. at 637.  The Ninth Circuit then held that a complaint alleging that "all Defendants performed all acts and omissions . . . . under the ordinances, regulations, customs, and practices of Defendant COUNTY OF TULARE . . ." and

1    that the defendants "maintained or permitted an official policy, custom or practice of knowingly

2    permitting the occurrence of the type of wrongs" too conclusory to satisfy applicable pleadings

3    standards.  *Id*. (internal quotations omitted).

4         The allegations in Mr. Rich's FAC regarding County liability are equally conclusory as the

5    municipality-liability allegations in *County of Tulare*.  However, like the court in *County of*

6    *Tulare*, Mr. Rich should have an opportunity to "allege additional facts supporting the claim that

7    [the] alleged constitutional violations were carried out pursuant to County policy or custom."  *Id*.

8    at 637–38.  The Court therefore **GRANTS** Defendants' motion to dismiss Mr. Rich's *Monell*

9    claim **without prejudice** should he discover facts supporting a *Monell* claim.

10   D.    <u>Supervisor Liability</u>

11        Defendants also argue that Mr. Rich's supervisor-liability claim is deficient.  In order to

12   impose liability against a supervisor (*e.g.*, Sheriff Ahern), Mr. Rich must allege that Sheriff Ahern

13   personally participated in the alleged conduct giving rise to liability.  *See Palmer v. Sanderson*, 9

14   F.3d 1433, 1438 (9th Cir. 1993) (quoting *Monell*, 436 U.S. at 692) ("Congress did not intend to

15   impose liability vicariously on [employers or supervisors] solely on the basis of the existence of an

16   employer-employee relationship with a tortfeasor.") (alteration in original).

17        There is no allegation in the FAC specific to Sheriff Ahern's physical participation in the

18   April 20, 2018 confrontation.  Instead, Mr. Rich seeks to impose liability against Sheriff Ahern for

19   his alleged failure to train and/or supervise the Deputy Defendants.  The only allegations from the

20   FAC that could be tied to Sheriff Ahern are that "[e]ach Defendant aided and abetted the other in

21   furtherance of the civil conspiracy with actual, inquiry and constructive knowledge of the

22   commission of each of the unlawful acts . . . ." and that the Deputy Defendants assaulted Mr. Rich

23   "in furtherance of their employment with Alameda County and under the direction of and policies

24   implemented by the County of Alameda and Defendant Gregory Ahern . . . ."  FAC ¶¶ 13, 20.

25        Much like the municipality liability against the County of Alameda, these allegations are

26   too conclusory to show a cognizable claim against Sheriff Ahern.  The FAC does not plead what

27   training was required and why; he does not allege how Mr. Ahern's training fell short such that it

28   amounted to a constitutional violation.  *See Ybarra v. Reno Thunderbird Mobile Home Village*,

United States District Court
Northern District of California

723 F.2d 675, 680–81 (9th Cir. 1984) ("[C]ourts have recognized a cause of action under § 1983 where it was alleged that a supervisor's failure to train or to supervise personnel led to the deprivation of constitutional rights . . . ."). Accordingly, like Mr. Rich's *Monell* claim this Court **GRANTS** Defendants' motion to dismiss Mr. Rich's supervisor liability claim against Sheriff Ahern **without prejudice**.

E.      Failure to Intervene

        The failure-to-intervene claim appears to be pled against all Defendants. "[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen . . . . [T]he constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows." *United States v. Koon*, 34 F.3d 1416, 1447 (9th Cir. 1994), *aff'd in part, rev'd in part*, 518 U.S. 81 (1996). However, a defendant may not be liable if he or she had no "realistic opportunity to intercede." *Cunningham v. Gates*, 229 F.3d 1271, 1290 (9th Cir. 2000).

        Here, Mr. Rich identifies that there were at least two deputies that were physically present (*e.g.*, Deputies Gainer and Pereira[4]) during the April 20 incident, and presumably at least one could have intervened to diffuse the situation. Mr. Rich has pled sufficient facts to state a cognizable claim for failure to intervene. Defendants' motion to dismiss the claim for failure to intervene is **DENIED**; but, as plead, it is only cognizable against Deputies Pereira and Gainer. As stated above, it is dismissed without prejudice as to the other deputies as there is no specific allegation that they were even in the room at the time of the incident.

F.      Coverup

        Defendants argue that Mr. Rich's coverup claim is not ripe for review because his Fourteenth Amendment excessive force claim is pending. *See, e.g.*, *Dooley v. Reiss*, 736 F.2d 1392, 1394–95 (9th Cir.) (affirming dismissal of Section 1983 action alleging police coverup where plaintiffs had in fact succeeded in obtaining redress for illegal police conduct in prior section 1983 action), *cert. denied*, 469 U.S. 1038 (1984); *Landrigan v. City of Warwick*, 628 F.2d

---

[4] Mr. Rich maintains that there could have been more than two deputies that assaulted him during the April 20 incident because someone hit him in the eye, but he could not see who.

736, 742 (1st Cir.1980) (affirming dismissal of Section 1983 claim alleging conspiratorial police coverup where plaintiff had in fact prevailed in previous state court action based on illegal police conduct).  As the Ninth Circuit has explained,"[P]laintiffs suffered no deprivation based on the belated disclosure of the police reports because they were not prevented from pursuing, and in fact obtained, relief in the [first] action"  *Dooley*, 736 F.2d 1392, 1395 (9th Cir. 1984).

While *Dooley* and *Landrigan* appear distinguishable because those cases were confronted with coverup claims presented in a ***second*** lawsuit—and here, Mr. Rich brings it all in one lawsuit—the vast majority of courts have concluded that dismissal without prejudice is proper when the underlying claims are still pending.  *See, e.g.*, *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 625 (9th Cir. 1988) ("Because the ultimate resolution of the present suit remains in doubt, Karim–Panahi's cover-up claim is not ripe for judicial consideration. Accordingly, the district court was correct in dismissing the claim, but should have dismissed without prejudice."); *accord Waller v. Hanlon*, 922 F.3d 590, 603 (5th Cir. 2019) ("we reverse the district court's order declining to dismiss the plaintiffs' denial-of-access claims and remand with instruction to dismiss those claims without prejudice.").

Accordingly, the Court **GRANTS** Defendants' motion to dismiss the coverup claim **without prejudice** while his underlying claims are pending.  *Rose v. City of Los Angeles*, 814 F. Supp. 878, 881 (C.D. Cal. 1993) ("Because the ultimate resolution of the present suit remains in doubt, Plaintiff's cover-up claim is not ripe for judicial consideration."); *Rainone v. Paz*, , 2018 WL 3197745, at *5 (C.D. Cal. June 26, 2018); *D.C. v. City of Antioch*, 2017 WL 3605214, at *4 (N.D. Cal. Aug. 21, 2017); *Cortez v. City of Oakland*, 2017 WL 1650568, at *4 (N.D. Cal. May 2, 2017).

G.    Indifference-to-Medical Needs

A plaintiff pursuing a Section 1983 claim for inadequate medical care under the Fourteenth Amendment[5] must plead the following:

(i) the defendant made an intentional decision with respect to the

---

[5] It is unclear whether Mr. Rich is pursuing this claim under the Fourteenth Amendment or the Eighth Amendment.

> conditions under which the plaintiff was confined; (ii) those
> conditions put the plaintiff at substantial risk of suffering serious
> harm; (iii) the defendant did not take reasonable available measures
> to abate that risk, even though a reasonable official in the
> circumstances would have appreciated the high degree of risk
> involved—making the consequences of the defendant's conduct
> obvious; and (iv) by not taking such measures, the defendant caused
> the plaintiff's injuries.

*Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018), cert. denied sub nom. *Cty. of Orange, Cal. v. Gordon*, 139 S. Ct. 794 (2019).

Mr. Rich's allegations in the FAC are somewhat conclusory—*e.g.*, "after Plaintiff sustained severe injuries, the Deputy Defendants failed and refused to obtain prompt medical care for Plaintiff. In addition, the other Defendants obstructed such medical care and treatment causing Plaintiff to languish in unnecessary pain and in a traumatized state for an excessive period of time." FAC ¶ 18. His grievances, however, are much more specific. Because of the April 20, 2018 altercation, Mr. Rich alleged that "I have headaches and a ringing in my head also two scars on my face and slight blurry visions. This was 22 days ago and I have not saw [sic] a doctor still about this issue . . . ." Carusu Decl., Ex. E (Grievance No. 18-1165, dated May 11, 2018). Moreover, he subsequently alleges that "I have not seen a doctor[.] I have headaches, blurry vision in my left eye, back pain in my lower back area, shoulder pain in my right shoulder[.] I have put in several sick call forms and have not got a xray on my back or my eye checked out or my head . . . ." Carusu Decl., Ex. F (Grievance No. 18-1165, dated May 31, 2018).

Reading the FAC in light of the grievances (which Defendants attached as exhibits to their motion), Mr. Rich's claim for inadequate medical care is sufficiently pled. The Court **DENIES** Defendants' motion to dismiss this claim.

H.   State Law Tort Claims

Mr. Rich initially did not provide a substantive response to Defendants' motion on the state law claims; however, with permission from the Court, the parties submitted supplemental briefs after the hearing on these issues. Docket Nos. 73, 76.

PLRA's administrative exhaustion requirement does not apply to state claims. *See* 42 U.S.C. §1997e(a) (emphasis added) ("No action shall be brought under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are

exhausted."); *Franklin v. McDonnell*, 2018 WL 6991084, at *7 (C.D. Cal. Nov. 20, 2018) ("The PLRA does not apply to Plaintiff's negligence claim, which arises under state law."). But an individual's state law claims against a public entity must comply with the California Government Claims Act. *See* Cal. Govt' Code §§ 905, 911.2, 945.4, 950.2. Specifically, an individual must present such claims before the public entity within six months from the accrual of the claim. *See* Gov't Code §§ 911.2, 911.4.

Defendants submit a declaration from Rhoda Bailey, a deputy clerk from the Alameda County Board of Supervisors. Docket No. 66-2 ("RJN"), Ex. A.[6] Ms. Bailey declares that she reviewed the records and found no document "from or on behalf of Albert Rich before January 31, 2019[.]" *Id.* However, on January 31, 2019, the Board received a copy of the lawsuit in this case. *Id.* Based on this record, Defendants argue that Mr. Rich failed to exhaust his state law tort claims under California law.

At the hearing, Mr. Rich did not dispute that he failed to file a notice with the Alameda County Board of Supervisors regarding his state-law claims. Instead, he takes the position that his grievances, alone, were sufficient to satisfy the California Government Claims Act. In the supplemental briefing, however, he does not cite to authority—binding or persuasive—in support of this position. But Mr. Rich does provide cases where, in the employment-law context, a plaintiff may be excused from complying with the California Government Claims Act when he or she complies with the Fair Housing and Employment Act. *See, e.g.*, *Garcia v. Los Angeles Unified Sch. Dist.*, 173 Cal. App. 3d 701, 712 (1985) ("School district had ample notice of appellant's claim through the EEOC and DFEH complaints, and had the opportunity to investigate and resolve the claim through the statutory procedures provided by these agencies. The school district has lost nothing but a technical defense by our conclusion that appellant was not required to file a government tort claim with them.").

However, what is at issue here is the relationship of prison grievances and the California

---

[6] The Court **DENIES** Defendants' request for judicial notice of a public employee declaration. *See Strojnik v. Azul Hospitality Grp.*, 2019 WL 6467494, at *3 (E.D. Cal. Dec. 2, 2019) (while some declarations may come from a proper source under Federal Rule of Evidence 201(b)(2), its accuracy is subject to question).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Government Claims Act.  Specifically, in *Ramey v. Tran*, the California Court of Appeal found

2    that the "[t]he [Claims] Act requires the timely presentation of a written claim for money or

3    damages directly to a public entity, and the rejection of that claim, as a condition precedent to a

4    tort action against either the public entity or an individual public employee acting within the scope

5    of his or her employment.  2004 WL 2634175, at *27 (Cal. Ct. App. Nov. 19, 2004).  The court

6    rejected the plaintiff's argument that he substantially complied with the Government Claims Act

7    by filing a prison grievance with the CDC.  The *Ramey* court held:  "claim presentation

8    requirement must be satisfied even if the public entity has actual knowledge of the circumstances

9    surrounding the claim.  It is well settled that actual knowledge by the public entity of the

10   circumstances of a potential claim-standing alone-constitutes neither substantial compliance nor a

11   basis for estoppel."  *Id*. (citing *City of San Jose v. Superior Court,* 12 Cal.3d 447, 455 (1974)).

12          While *Ramey* is an unpublished California Court of Appeal decision, federal courts are not

13   precluded from considering the analysis on state-law issues as persuasive authority.  *Nunez by*

14   *Nunez v. City of San Diego*, 114 F.3d 935, 943 n.4 (9th Cir. 1997).  This Court finds the *Ramey*

15   decision more analogous and persuasive than *Garcia* because it deals with prison administrative

16   grievances, rather than the statutory scheme governing employment disputes.  The FEHA

17   exhaustion scheme is statutory and one that can provide monetary relief; it enjoys the same dignity

18   as the California Government Claims Act and largely serves the same general function.

19   Satisfaction of FEHA can reasonably be deemed to satisfy the parallel statutory scheme of the

20   California Government Claims Act.  The same is not as true with respect to the local grievance

21   procedures of a jail.  The Court thus applies *Ramey* until other contrary authority indicates

22   otherwise.  Accordingly, because Mr. Rich's compliance with the California Government Claims

23   Act is a condition precedent for pleading his state law claims against Defendants, and he failed to

24   comply with such condition.  This Court **GRANTS** Defendants' motion to dismiss **with prejudice**

25   as to all Mr. Rich's state law claims.

26   ///

27   ///

28   ///

20

1

V.      **CONCLUSION**

In sum, the Court rules as follows:

- Defendants' motion for summary judgment on their affirmative defense of failure to exhaust under the PLRA is **GRANTED** as to Mr. Rich's Section 1983 claim for violation of Equal Protection and conspiracy;

- Defendants' motion for summary judgment on the issue of exhaustion is **DENIED** as to Mr. Rich's remaining Section 1983 claims;

- Notwithstanding Mr. Rich's PLRA exhaustion, Defendants' motion to dismiss is **GRANTED** as to claims for municipality liability, supervisory liability, and coverup **without prejudice**; the motion to dismiss is also **GRANTED** as to all state tort claims **with prejudice** for failure to comply with the California Government Claims Act;

- Defendants' motion to dismiss Mr. Rich's failure-to-intervene claim and indifference-to-medical needs claim is **DENIED**.  There claims, however, are only cognizable at this juncture against Deputies Gainer and Pereira.

This order disposes of Docket No. 66.


**IT IS SO ORDERED**.


Dated: June 22, 2020


_____
EDWARD M. CHEN
United States District Judge

21